UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES R.,

                              Plaintiff,

                v.

KILOLO KIJAKAZI,[1] Commissioner of
  Social Security,

                          Defendant.
_____

**DECISION
and
ORDER**

**21-CV-1153F**
(**consent**)

APPEARANCES:           LACHMAN & GROTON
                          Attorneys for Plaintiff
                          PETER A. GROTON, of Counsel
                          1500 East Main Street
                          P.O. Box 89
                          Endicott, New York  13760

                          TRINI E. ROSS
                          UNITED STATES ATTORNEY
                          Attorney for Defendant
                          Federal Centre
                          138 Delaware Avenue
                          Buffalo, New York  14202
                                 and
                          VERNON NORWOOD
                          Special Assistant United States Attorney, of Counsel
                          Social Security Administration
                          Office of General Counsel
                          6401 Security Boulevard
                          Baltimore, Maryland  21235

## **JURISDICTION**

On April 6, 2023, the parties to this action consented pursuant to 28 U.S.C.

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

§ 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018 Standing Order (Dkt. 13).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on March 16, 2022 (Dkt. 9), and by Defendant on June 15, 2022 (Dkt. 12).

## BACKGROUND

Plaintiff James R. ("Plaintiff"), brings this action under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application ("application") filed with the Social Security Administration ("SSA") on June 14, 2019, for Supplemental Security Income ("SSI") under Title XVI of the Act ("disability benefits").  Plaintiff alleges he became disabled on June 1, 2015, based on bi-polar disorder, anxiety, panic attacks, post-traumatic stress disorder ("PTSD"), intermittent explosive disorder, and back pain. AR[2] at 270-77, 304, 309.  Plaintiff's application initially was denied on September 27, 2019.  AR at 142-47.

On November 4, 2019, Plaintiff timely filed a request for reconsideration, AR at 76-78, which was denied on January 21, 2020.  AR at 156-67.  On January 28, 2020, Plaintiff requested an administrative hearing, AR at 168-69, which was granted with the administrative hearing held by telephone conference on June 17, 2020, before Administrative Law Judge ("ALJ") David Romeo ("ALJ Romeo"), located in Syracuse, New York ("the first administrative hearing").  AR at 40-68. Appearing and testifying by

---

[2] References to "AR" are to the Bates-numbered pages of the Administrative Record electronically filed by Defendant on January 19, 2022 (Dkt. 8).

telephone at the hearing were Plaintiff, represented by legal counsel Peter A. Gorton, Esq., along with an impartial vocational expert ("VE") Brian J. Daly ("VE Daly").

On July 1, 2020, ALJ Romeo issued a decision denying Plaintiff's claim, AR at 119-34 ("first ALJ Decision"), which Plaintiff timely appealed to the Appeals Council ("administrative appeal").  AR at 149-51.  On December 31, 2020, the Appeals Council granted Plaintiff's request for review and remanded the matter to the ALJ with instructions to admit into evidence additional medical records, further consider Plaintiff's maximum residual functional capacity ("RFC"), during the entire period at issue, *i.e.*, from the alleged disability onset date through the date of second ALJ Decision, and provide specific references to the evidence of record in support of the assessed limitations and, if warranted, obtain supplemental evidence from a vocational expert, as well as offer the Plaintiff an opportunity for a new hearing to address the new evidence. AR at 137-40.

On March 31, 2021, a second administrative hearing was held by telephone conference before Administrative Law Judge ("ALJ") Kenneth Theurer ("ALJ Theurer" or "the ALJ"), located in Syracuse, New York ("the second administrative hearing" or "the administrative hearing").  AR at 40-68. Appearing and testifying by telephone at the second administrative were Plaintiff, represented by legal counsel Peter Gorton, Esq., along with an impartial vocational expert Esperanza DiStefano ("VE DiStefano" or "the VE").

On April 9, 2021, ALJ Theurer issued a decision denying Plaintiff's claim, AR at 19-39 ("second ALJ Decision"), which Plaintiff timely appealed to the Appeals Council ("second administrative appeal").  AR at 265-67.  On October 1, 2021, the Appeals

Council denied Plaintiff's request for review, AR at 1-7, rendering the second ALJ Decision the Commissioner's final decision on Plaintiff's disability benefits application. In connection with the second administrative appeal, Plaintiff provided to the Appeals Council additional medical evidence which the Appeals Counsel did not consider as it was duplicative of evidence already in the Administrative Record or did not show a reasonable probability that it would change the outcome of the second ALJ Decision. AR at 2.  On October 26, 2021, Plaintiff commenced the instant action seeking review of the second ALJ Decision denying Plaintiff disability benefits.

On March 16, 2022, Plaintiff moved for judgment on the pleadings (Dkt. 9 ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of the Plaintiff's Motion for Judgment on the Pleadings (Dkt. 9-1) ("Plaintiff's Memorandum").  On June 15, 2022, Defendant moved for judgment on the pleadings (Dkt. 12) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Rule 5.5 (Dkt. 12-1) ("Defendant's Memorandum").  Neither Plaintiff nor Defendant filed any replies with regard to the motions.  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.


**FACTS**[3]

Plaintiff James R. ("Plaintiff"), born December 18, 1966, was 48 years old as of his alleged disability onset date ("DOD") of June 1, 2015, and 54 years old as of March

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

21, 2021, the date of the second ALJ's Decision.  AR at 22, 34, 48, 270, 304, 309.   As of the first administrative hearing, Plaintiff was married and lived with his wife and his mother in his mother's house.  AR at 48.  At the second administrative hearing, Plaintiff was estranged from his wife who had an order of protection against him, had four adult children who did not associate with Plaintiff because of Plaintiff's anger issues, Plaintiff had a new girlfriend, and Plaintiff continued to live with his mother.  AR at 78, 653-54, 661, 667, 673, 680.  In school, Plaintiff was in special education classes and did not graduate high school, but obtained a GED in 2005, did not serve in the military, and has not completed any specialized training, trade, or vocational school.  AR at 49, 310. Plaintiff has a driver's license, but seldom drives for a long time because of his back impairment and mental health issues, and Plaintiff's wife usually drove Plaintiff.  AR at 49.  Plaintiff does not have an extensive work history and his past relevant work ("PRW") is limited to short stints detailing cars, as a factory worker, a fork lift driver, a fork lift operator, and for a tire company through a temporary employment agency.  AR at 311.  On August 21, 2019, Plaintiff left a job working at his church when he refused to comply with a request to stop smoking, AR at 623, after which Plaintiff worked odd jobs around town while he awaited approval for disability benefits.  AR at 624.  Plaintiff maintains he left his temporary job with the tire company because being around others made him anxious and irritable.  AR at 531.

   It is undisputed Plaintiff suffers from multiple physical impairments including degenerative disc disease of the lumbar spine, radiculopathy into the left lower extremity, depression, anxiety, and intermitted explosive disorder.  Plaintiff obtained primary care and pain management treatment at Watkins Glen Primary Care and Arnot

Ogden Medical Center ("AOMC"), where he saw Vidyasagar Mokureddy, M.D. ("Dr. Mokureddy"), and Nurse Practitioner Jill Reidy, FNP ("NP Reidy"), AR at 376-403, 404-24, 493-530, 553-610, 696-749, and obtained mental health treatment at Schuyler County Mental Health Clinic.  AR at 425-92, 620-95.

In connection with his disability benefits application, on September 12, 2019, Plaintiff underwent a psychiatric evaluation by psychologist Amanda Slowik, Psy.D. ("Dr. Slowik").  AR at 531-35.  Dr. Slowik assessed Plaintiff as "mildly impaired" with regard to attention and concentration, recent and remote memory skills, and the ability to understand, remember, and apply complex directions and instructions, use reason and judgment to make work-related decisions, and to sustain concentration and perform a task at a consistent pace, AR at 533-34, and moderately to markedly impaired as to his ability to interact adequately with supervisors, coworkers, and the public, sustain an ordinary routine and regular attendance at work, and regulate emotions, control behavior, and maintain well-being because of anger and anxiety.  AR at 534.  Dr. Slowik diagnosed intermittent explosive disorder, unspecified anxiety disorder, and history of alcohol abuse, noting these diagnoses were "reported by the claimant," AR at 534, recommended Plaintiff continue with psychological treatment, his "extremely high dose" of benzodiazepine (anxiety medication) should be reevaluated in light of its "addiction potential," and that Plaintiff "may also benefit from medical followup and evaluation and vocational training."  *Id.*  Dr. Slowik reported Plaintiff's prognosis was "[g]uarded to poor, as claimant does not appear particularly motivated for behavioral change."  *Id.*  That same day, Plaintiff underwent an internal medicine examination by Gilbert Jenouri, M.D. ("Dr. Jenouri"), who diagnosed low back pain and left lower extremity radiculopathy for

which the prognosis was stable, AR at 537-40, and assessed Plaintiff with mild to

moderate restrictions to walking and standing for long periods, bending, stair climbing,

lifting, and carrying.  AR at 539.

On September 24, 2019, State Agency review psychologist C. Walker, Ph.D.

("Dr. Walker"), and physician R. Reynolds, M.D. ("Dr. Reynolds") reviewed Plaintiff's

medical records.  AR at 91-103.  Dr. Walker diagnosed Plaintiff with bipolar and related

disorders, and anxiety and obsessive-compulsive disorders, and assessed Plaintiff with

mild restrictions in the domains of understanding, remembering and applying

information, as well as concentration, persistence, and maintaining pace, and moderate

restrictions in the domains of interacting with others and adapting or managing himself,

which restrictions did not satisfy the SSA's applicable regulations for disability based on

these conditions.  AR at 95, 99-101.  Dr. Reynolds did not provide a particular diagnosis

for Plaintiff, but observed that Plaintiff complained of low back pain and that an October

9, 2019 MRI of Plaintiff's lumbo-sacral spine revealed a small disc herniation at L5-S1,

and an X-ray revealed moderate degenerative changes at T11-L4 and L4-S1.  AR at 98-

99.  Dr. Reynolds further assessed Plaintiff with several exertional limitations including

occasionally lifting and carrying 20 lbs., frequently lifting and carrying 10 lbs., standing

or walking six hours in an eight-hour workday, sitting six hours in an eight-hour workday,

and occasionally climbing stairs, ramps, ladders, ropes, scaffolds, and occasionally

bend at the waist.  AR at 97-10.  Dr. Reynolds assessed no postural limitations to

balancing, kneeling, crouching, or crawling, no manipulative or visual, or communicative

limitations, but environmental limitations including avoiding concentrated exposure to

fumes, odors, dusts, gases, poor ventilation, and hazards (machinery and heights), AR

at 97-98, concluding Plaintiff is limited to work of "light" exertion.  AR at 102-03.

Plaintiff's medical records were again reviewed by State Agency review psychologist M.

Marks, Ph.D. ("Dr. Marks"), on November 14, 2019, and physician S. Naroditsky, M.D.

("Dr. Naroditsky"), on November 15, 2019.[4]  AR at 105-17.  The findings by both Dr.

Marks and Dr. Naroditsky were essentially the same and consistent with the September

24, 2019 State Agency review assessments.

On May 6, 2021, mental health nurse practitioner Nina Toupin, PMHNP-BC ("NP

Toupin"), completed a mental health questionnaire.  AR at 12-13 ("NP Toupin's

assessment").  NP Toupin explained she is Plaintiff's "current treating practitioner," who

met with Plaintiff monthly, and that Plaintiff is "working in outpatient therapy every two

weeks on average."  *Id*. at 13.  NP Toupin listed Plaintiff's mental health diagnoses as

including panic disorder with agoraphobia, and bipolar disorder, not otherwise specified,

and reported that as a result of these disorders, Plaintiff had marked limitations with

regard to concentration and persistence, as well as with handling stress in a work

setting with simple tasks, was likely to be off-task more than 20% of a workday, and

would be absent from work three or more days per month.  AR at 12-13.  NP Toupin

further indicated Plaintiff would be unable to regulate his emotions in a job situation

even if the job were "low contact" because Plaintiff's has "periods of extreme emotions

ranging from anger to being completely withdrawn and is unable to leave his home."  *Id*.

at 13.

---

[4] It is not clear from the record why Plaintiff's medical records were again reviewed by State Agency review medical personnel less than two months after the initial review on September 24, 2019.

**DISCUSSION**

**1.     Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability

benefits when she is unable "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§

416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's

determination that a claimant is not disabled if the factual findings are not supported by

substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g),

1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In

reviewing a final decision of the SSA, a district court "is limited to determining whether

the SSA's conclusions were supported by substantial evidence in the record and were

based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012) (internal quotation marks and citation omitted).  "Substantial evidence is more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's

function to make a *de novo* determination as to whether the claimant is disabled; rather,

"the reviewing court is required to examine the entire record, including contradictory

evidence and evidence from which conflicting inferences can be drawn" to determine

whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has

instructed . . . that the factual findings of the Secretary,[5] if supported by substantial

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2.    Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.[6] *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and

---

[6] Although the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title II, 42 U.S.C. § 423(d), and Title XVI, 42 U.S.C. § 1382c(a)(3), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's RFC which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the

criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

**3.      Analysis of Plaintiff's Arguments**

In the instant case, ALJ Theurer found Plaintiff has not engaged in substantial gainful activity ("SGA") since June 14, 2019, the date Plaintiff filed his application for disability benefits.  AR at 24.  The ALJ found Plaintiff suffers from the severe impairments of degenerative disc disease of the lumbar spine with disc herniation and sciatica, left lower extremity radiculopathy, major depressive disorder, generalized anxiety disorder, and intermittent explosive disorder, *id*. at 24-25, but that Plaintiff's history of asthmatic bronchitis in the context of on-going cigarette use, although medically established, does not pose more than a minimal effect on Plaintiff's ability to perform physical or work activities and, as such, is not a severe impairment, *id*. at 25, and that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*. at 25-26.  Despite his impairments, the ALJ found Plaintiff retains the RFC to perform a limited range of light work as defined by 20 C.F.R. § 416.967(b), including the ability to occasionally lift and carry 20 lbs., frequently lift and carry 10 lbs., sit for up to six hours, stand or walk or approximately six hours in an 8-hour workday with normal breaks, occasionally climb ramps or stairs, never climb ladders, ropes or scaffolds, can perform occasional balancing, stooping, kneeling, crouching, and crawling, should avoid concentrated exposure to smoke, dust, and respiratory irritants, and should avoid work at unprotected heights or in conjunction with

dangerous machinery.  With regard to Plaintiff's mental RFC, Plaintiff retains the ability to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, can relate to and interact with co-workers and supervisors to the extent necessary to carry out simple tasks, *i.e.*, he can ask for help when needed, handle conflicts with others, state his own point of view, initiate or sustain a conversation and understand and respond to physical, verbal, and emotional social cues, but he should avoid work requiring more complex instructions or joint efforts with co-workers to achieve work goals.  Plaintiff should have no more than occasional contact with co-workers and supervisors and should have no more than incidental contact with the public, with incidental defined as more than never and less than occasional such that the job should not involve direct interaction with the public but need not be isolated from the public.  Plaintiff also can handle reasonable levels of simple work-related stress in that Plaintiff can make simple decisions directly related to the completion of his tasks in a stable, unchanging work environment.  AR at 26-32. The ALJ further found Plaintiff is incapable of performing his PRW, *id*. at 32-33, but that based on Plaintiff's age on the application date of 52, which is defined as a younger individual, and given Plaintiff's RFC, education, and ability to communicate in English, with transferability of skills irrelevant to the disability determination, there are jobs existing in significant numbers in the national economy that Plaintiff is capable of performing including as a marker, silver wrapper, and assembler of small products.  *Id*. at 33-34.  Accordingly, the ALJ found Plaintiff was not disabled as defined in the Act since June 14, 2019, the application date.  *Id*. at 34.

In support of his motion, Plaintiff argues ALJ Theurer improperly assessed the medical opinions of record particularly with regard to the "supportability" and "consistency" factors, as required by 20 C.F.R. § 416.920c(a), resulting in an RFC that is not supported by the record, Plaintiff's Memorandum at 6-19, Plaintiff's mental RFC is not supported by the record, *id*. at 19-23, the Appeals Council did not properly consider the newly submitted evidence, *i.e.*, NP Toupin's May 6, 2021 opinion, *id*. at 23-25, and the ALJ improperly failed to present to the VE a hypothetical that accounted for all of Plaintiff's limitations such that the jobs identified by the VE are not supported by substantial evidence.  *Id*. at 25-26.  Defendant argues the second ALJ Decision was supported by substantial evidence in the record, Defendant's Memorandum at 12-16, including the medical and non-medical evidence which the ALJ properly evaluated, *id*. at 16-21, and ALJ Theurer's RFC formulation which supports the VE's finding there are several jobs in the national economy that Plaintiff can perform, *id*. at 21-23, and the evidence submitted to the Appeals Council following the second ALJ Decision provided no basis to change such decision, *id*. at 23-26.  There is no merit to Plaintiff's arguments.

Preliminarily, it is the ALJ, and not a medical source, who is responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 404.1527(d)(2), 416.946(c), and 416.927(d)(2).  In formulating an RFC, "the ALJ is 'entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'" *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (quoting *Matta v. Astrue*, 508 Fed.Appx. 53, 56 (2d Cir. 2013) (brackets in *Schillo*)).  *See Monroe v. Comm'r of Soc. Sec.*, 676 Fed.Appx. 5, 9 (2d Cir. 2017) (the ALJ could rely on voluminous treatment notes that

provided medical assessments of Plaintiff's characteristics relevant to her ability to work, as well as her activities of daily living, to formulate the RFC without the benefit of a medical opinion where the record contained sufficient evidence from which an ALJ could assess the claimant's RFC). The ALJ is permitted to formulate the RFC without regard to any particular medical opinion provided the record as a whole contains sufficient evidence from which the claimant's RFC can be determined. *See Cook v. Comm'r of Soc. Sec.,* 818 Fed.Appx. 108, 109-10 (2d Cir. 2020) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity.'" (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.Appx. 29, 34 (2d Cir. 2013)). Nor is an ALJ required to perform an explicit function-by-function analysis before determining a claimant's RFC. *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). As such, so long as the evidence in the administrative record, including diagnostic evidence, MRI results, X-ray results, and treatment notes support the ALJ's RFC determination, it cannot be said that "no reasonable factfinder could have reached the same conclusion," so as to uphold an RFC assessment upon judicial review. *Schillo*, 31 F.4th at 78 (citing *Brault*, 683 F.3d at 448). *See also Cook,* 818 Fed.Appx. at 109 -10 ("Here, the treatment notes were in line with the ALJ's RFC determinations."); *Corbiere v. Berryhill*, 760 Fed.Appx. 54, 56 (2d Cir. 2019) (affirming the Commissioner's final decision despite the lack of a medical opinion expressly discussing plaintiff's physical limitations and relying on plaintiff's treatment notes to formulate the RFC); *Trepanier v. Comm'r of Soc. Sec.*, 752 Fed.Appx. 75, 79 (2d Cir. 2018) (the ALJ's RFC determination related to

plaintiff's lifting requirement, while not directly supported by a medical opinion, was supported by an assessment from which the ALJ could infer that Plaintiff could perform the lifting requirement); *Monroe*, 676 Fed.Appx. at 8 ("Where . . . the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity," a medical source statement or formal medical opinion is not necessarily required[.]") (citing *Tankisi*, 521 Fed.Appx. at 34 (where "the record contains sufficient evidence from which an ALJ can assess . . . residual functional capacity," a medical source statement or formal medical opinion is not necessarily required)).  Here, the requisite deferential review of the ALJ's decision establishes it is supported by substantial evidence in the record.

### A.    Physical Impairment

With regard to Plaintiff's physical impairments, ALJ Theurer found Plaintiff has a back impairment described as degenerative disc disease of the lumbar spine with disc herniation and sciatica, and left lower extremity radiculopathy.  AR at 24.  Despite these impairments, the ALJ found Plaintiff retains the physical RFC for a limited range of light work which, as defined by the relevant regulation, requires

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

According to Plaintiff, ALJ Theurer, in finding Plaintiff's back impairment does not preclude Plaintiff from performing the exertional requirements of a limited range of light work, merely recites parts of the medical evidence in the record without explaining how Plaintiff, despite such impairment, could meet the demands for work, especially with regard to the medical opinions of Drs. Reynolds and Noraditsky which the ALJ found persuasive but failed to discuss "supportability" of such opinions and their "consistency" with the record as required by 20 CF.R. § 416.920c(a). Plaintiff's Memorandum at 6-12. In opposition, Defendant maintains the ALJ properly determined the opinions of Drs. Reynolds and Noraditsky were persuasive and insofar as the ALJ failed to specifically articulate the supportability and consistency of the opinions, such error was harmless. Defendants' Memorandum at 16-19.

When a medical source provides one or more medical opinions, the Commissioner will consider the medical opinions from that source together according to five factors including (1) supportability; (2) consistency; (3) the medical's source's relationship with the claimant; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 416.920c(c). Relevantly, when evaluating the persuasiveness of a medical opinion, the two most important factors are supportability and consistency, 20 C.F.R. § 419.920c(a), and the ALJ must articulate he or she considered the "supportability" and "consistency" of a medical source's opinion, 20 C.F.R. § 416.920c(b)(2), but is not required to articulate consideration of the remaining factors. *Id.* Where, however, as here, the ALJ fails to articulate the supportability and consistency factors with regard to opinions found persuasive, such error is harmless where the record establishes

application of the correct legal standard would not have changed the outcome of the disability determination.  *See Scott A. v. Comm'r of Soc. Sec.*, 2022 WL 3141707, at * 5-6 (N.D.N.Y. May 3, 2022) (applying harmless error standard announced in *Schall v. Apfel*, 134 F.3d 496, 504-05 (2d Cir. 1998) where the ALJ failed to articulate the supportability and consistency factors in assessing the persuasiveness of a physician's opinion where application of the correct legal standard would not have resulted in a different conclusion (comparing *Johnathan W. v. Saul*, 2021 WL 1163632, at * 7 (N.D.N.Y. Mar. 26, 2021) (finding ALJ's failure to articulate how persuasive was a physician's opinion, including failing to explain the supportability and consistency factors, was not harmless error because that opinion could have impacted the ALJ's analysis in a meaningful way))).

In assessing the evidence of record, ALJ Theurer found persuasive the opinions of State Agency medical consultants Drs. Reynolds and Naroditsky, and consultative examiner Dr. Jenouri.  AR at 31-32.  In making this assessment, the ALJ observed that all three physicians supported their conclusions that Plaintiff can perform a limited range of light work with "a detailed review of the claimant's medical records," and that Dr. Jenouri also physically examined Plaintiff.  AR at 31.  The ALJ also found the assessments were supported by and consistent with the objective findings of MRI and X-ray imaging including an October 9, 2018 MRI of Plaintiff's lumbar spine that showed all lumbar discs in various stages of degeneration with a small central disc herniation at L5-S1, but no other remarkable abnormalities, AR at 28 (citing AR at 408), a September 19, 2019 X-ray of Plaintiff's lumbosacral spine that showed no body abnormality but moderate degenerative changes at T11-L4 levels, and mild degenerative changes at

L4-S1 levels, *id*. (citing AR at 541), and an April 3, 2020 MRI of Plaintiff's lumbar spine that showed degenerative disc disease and osteoarthritis, a central disc protrusion at L5-S1, but with no significant neuroforaminal narrowing or central canal stenosis.  *Id*. (citing AR at 612).  The ALJ observed that upon examination by Dr. Jenouri, Plaintiff was in no acute distress, walked with a normal gait, had a normal stance, a reduced range of motion in his spine but normal strength and sensation, and needed no help changing for the examination, getting on or of the examination table, or rising from a chair.  AR at 29 (citing AR at 538-39).  The ALJ took note that Plaintiff's treatment for his back impairment included injections and medication, and Plaintiff was not in acute distress, was never hospitalized, and did not report on-going negative side effects from his medications.  AR at 29 (citing AR at 493-530; 537-42; 553-619; and 696-746).  Further, the opinions of Dr. Reynolds, Dr. Naroditsky, and Dr. Jenouri were consistent in assessing Plaintiff with exertional limitations permitting 'light' work by Plaintiff.  *See* AR at 110 (Dr. Naroditsky on November 15, 2019); AR at 97 (Dr. Reynolds on September 24, 2019); and AR at 539 (Dr. Jenouri on September 12, 2019).  Significantly, consultative examiners and State agency medical consultants are deemed to be highly qualified physicians who are experts in Social Security disability evaluations and an ALJ is entitled to rely upon their opinions, which can also serve as substantial evidence.  *See Petrie v. Astrue*, 412 Fed.Appx. 401, 405-06 (2d Cir. 2011) (citing 20 C.F.R. §§ 404.1513a and 416.913a, *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004), and *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)).  Further, although Plaintiff reported some falling on September 8 and 14, 2020, AR at 29-30 (citing AR at 728, 733), on December 22, 2020, Plaintiff had not had any recent falls.  AR at 30 (citing AR

at 712).  The ALJ also considered Plaintiff's own description of his activities of daily

living, including that Plaintiff could bathe, dress, and groom himself, cook, clean, drive,

go fishing and to the races, do woodworking, read, watch television, and listen to music,

AR at 30, as well as that Plaintiff had been working at his church and performing "odd

jobs" around the community, AR at 30 (citing AR at 623, 624), to be inconsistent with

Plaintiff's complaints regarding his back impairment.  *See Green v. Comm'r of Soc.*

*Sec.*, 2018 WL 2269797, at * 3 (W.D.N.Y. May 17, 2018) (the ALJ's consideration of the

plaintiff's activities of daily living showed they were inconsistent with a finding of

disability).

Accordingly, the ALJ's consideration of Plaintiff's back impairment is supported

by substantial evidence in the record.


**B.    Mental Impairment**

With regard to Plaintiff's mental impairments, identified by ALJ Theurer as major

depressive disorder, generalized anxiety disorder, and intermittent explosive disorder,

the ALJ found such impairments, neither individually nor in combination, meet the

severity of a Listed impairment because the psychological consultants' assessments

performed by Drs. Marks, Walker, and Slowik, were consistent with Plaintiff's repeated

unremarkable mental status examination findings, conservative mental health treatment,

and activities of daily living.  Second ALJ Decision at 32.  Specifically, both Dr. Marks

and Dr. Walker, who are State Agency review psychologists who issued their

assessments after reviewing Plaintiff's mental health treatment records, found Plaintiff

with mild restrictions in the domains of understanding, remembering and applying

information, as well as concentration, persistence, and maintaining pace, and moderate restrictions in the domains of interacting with others and adapting or managing himself, which restrictions did not satisfy the SSA's applicable regulations for disability based on these conditions.  AR at 95, 99-101, 105-17.  Similarly, Dr. Slowik, who performed a consultative psychiatric evaluation, assessed Plaintiff as "mildly impaired" with regard to attention and concentration, recent and remote memory skills, and to understand, remember, and apply complex directions and instructions, use reason and judgment to make work-related decisions, and sustain concentration and perform a task at a consistent pace.  AR at 533-34.  Although Dr. Slowik also assessed Plaintiff as "moderately to markedly impaired" with regard to interacting adequately with supervisors, coworkers, and the public, sustaining an ordinary routine and regular attendance at work, and regulating emotions, controlling behavior, and maintaining well-being because of anger and anxiety, AR at 534, Dr. Slowik further recommended Plaintiff "may also benefit from medical followup and evaluation and vocational training," *id*., thereby strongly implying Plaintiff's mental health impairments did not preclude Plaintiff from working.  The ALJ also took note that Plaintiff reported he continued to work "odd jobs" around the town, AR at 623-24, and that Plaintiff had recently left a job at his church after he was asked to refrain from smoking.  *Id*. at 623.  Moreover, Plaintiff's argument that the ALJ should have found further functional limitations, particularly, the "marked" limitations assessed by NP Toupin, essentially requests the court to ignore the deferential standard applicable to reviews of administrative decisions which must be upheld unless "a reasonable factfinder would *have to conclude otherwise*."  *Brault*, 683 F.3d at 448 (emphasis in original).  Based on the generally

consistent opinions of the psychological medical reviews by Drs. Marks, Walker, and Slowik, the record does not support such a conclusion.

The second ALJ Decision is thus supported by substantial evidence in the record with regard to Plaintiff's mental health impairment.

### C.      Hypothetical

Plaintiff argues the VE's testimony regarding the jobs Plaintiff could perform is not substantial evidence because such testimony was based on hypothetical questions that did not include all of Plaintiff's limitations.  Plaintiff's Memorandum at 25-26.  As Defendant argues, Defendant's Memorandum at 21-23, the hypothetical posed to the VE need not include every limitation alleged by Plaintiff, but only those limitations the ALJ determines are supported by substantial evidence in the record.  *See McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (the ALJ may rely on the VE's testimony provided the hypothetical posed to the VE is supported by substantial evidence in the record).  Here, substantial evidence supports the hypothetical posed by ALJ Theurer to VE DiStefano.  *See* Discussion, *supra*, at 18-22.  Accordingly, there is no merit to this argument.

### D.      Evidence Submitted to the Appeals Council

Plaintiff argues the Appeals Council erred in failing to consider newly submitted evidence, specifically, NP Toupin's  assessment, on the ground that it provided no basis to change the second ALJ Decision.  Plaintiff's Memorandum at 23-24.  Defendant maintains the ALJ did not err in failing to consider NP Toupin's assessment not only

because it post-dates the relevant period at issue, but also because the assessment is without supporting contemporaneous records.  Defendant's Memorandum at 23-27. The court's review of NP Toupin's assessment establishes Defendant's argument is correct.

Specifically, NP Toupin's assessment is dated May 6, 2021, just shy of one month after the second ALJ Decision was issued by ALJ Theurer on April 9, 2021.  NP Toupin neither mentions nor incorporates any new treatment records into her assessment.  *See Reynolds v. Colvin*, 570 Fed.Appx. 45, 48 (2d Cir. 2014) (a retrospective medical opinion must be accompanied by contemporaneous records). Accordingly, the Appeals Council's rejection of NP Toupin's assessment was not error.

In short, under the court's "very deferential standard of review," *Brault*, 683 F.3d at 448, the plethora of evidence in the administrative record cited by ALJ Cordovani, including treatment notes and MRI results, establishes "that no reasonable factfinder could [not] have reached the same conclusion," *i.e.*, that the ALJ's RFC assessment that Plaintiff, despite his impairments, remained capable of performing a limited range of light work.  *Schillo*, 31 F.4th at 78.  Accordingly, the second ALJ Decision was supported by substantial evidence in the record, requiring Plaintiff's Motion be DENIED and Defendant's Motion be GRANTED.

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff's Motion (Dkt. 9) is DENIED; Defendant's Motion

(Dkt. 12) is GRANTED; the Clerk of Court is directed to CLOSE the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      August 29th, 2023
                 Buffalo, New York